## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**JEFREY ROSARIO,**

   **Petitioner,**

**vs.**                                           **Case No. 4:21-cv-226-MW-MAF**

**MARK S. INCH,**
**SEC'Y FLORIDA DEP'T OF CORR.**

   **Respondent.**
_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, Jefrey Rosario, a convicted state felon, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence for two counts of attempted second-degree murder, the result of a jury verdict in the Second Judicial Circuit Court in and for Leon County, Case No. 2011-CF-2123. ECF No. 1.

The Court reviewed the petition, ECF No. 1, together with the State's Response (ECF No. 11), along with its supporting exhibits consisting of all pertinent portions of the underlying criminal file in the State's case against Rosario, as well as the subsequent appellate filings and decisions. ECF No. 10. Rosario's Reply has also been considered. ECF No. 20. For the reasons stated, this Section 2254 petition should be denied.

## I.   Claims

Rosario raises the following grounds for relief:

1. The trial court erred in denying Rosario's motion to suppress statements because his statements were involuntary and the result of coercion, overreaching, or deception by investigators. ECF No. 1, pp. 4-12.

2. The trial court erred by denying Rosario's motion to incur costs for a use-of-force expert or, alternatively, denying the motion to continue the case. Id., pp. 12-18.

3. Counsel was ineffective for failing to object to the jury instruction that Rosario had a duty to retreat and could not stand his ground and meet force with force if he was engaged in unlawful activity. Id., pp. 18-26.

4. Appellate counsel was ineffective for failing to argue on appeal the trial court erred in giving the duty to retreat jury instruction. Id., pp. 26-27.

5. Appellate counsel was ineffective for failing to argue on appeal the trial court erred in denying the request to modify the standard justifiable use of force instruction supporting fact. Id., pp. 27-30.

## II.   Procedural and Factual Background

### A. Information, Arrest, Trial, Motion to Suppress Statements

On July 6, 2011, Rosario, then twenty-one years old, and his co-defendant, Luis Gutierrez-Torres (Torres) drove to the parking lot of an apartment complex to sell marijuana. See ECF Nos. 10-6, p. 69; 10-7, pp. 7-50. Two males, Steven Key and Lavar Morant, approached the black mustang. Id. The drug deal went awry when a struggle for the marijuana

ensued between Torres and Morant. Id. As Key and Morant were running away from Rosario's vehicle, Rosario shot at them five to six times; both were injured. Id. Rosario was arrested and released pending trial. ECF No. 10-6, pp. 24-25, 68-69.

On July 11, 2011, investigators questioned Rosario at the Tallahassee Police Station after he waived his Miranda rights. ECF No. 10-7, pp. 7-50. Rosario admitted his involvement. Id. Rosario was charged with two counts of attempted first degree murder, possession of a controlled substance with intent to sell, and possession of drug paraphernalia. ECF No. 10-6, pp. 66-67.

Rosario filed a motion to suppress his statements to law enforcement. ECF No. 10-6, pp. 131-34; ECF No. 10-7, pp. 2-6. At the evidentiary hearing, Rosario testified, but the trial court denied the motion. ECF No. 10-15, pp. 24- 78. Rosario also filed a motion to dismiss the case seeking immunity under Florida's "Stand Your Ground" law, Fla. Stat. § 776.032.[1] The trial court held a two-day evidentiary hearing beginning October 14, 2015. ECF Nos. 10-15, pp. 79-92; 10-16, pp. 2-88. Rosario, Torres, and an eyewitness,

---

[1] The trial court initially denied the motion to dismiss; and Rosario appealed. ECF No. 10-5. The appellate court found the trial court erred in applying the 2014 amendments retroactively and remanded the motion for an evidentiary hearing. Id.

Lucy Brabham, testified. The trial court assigned "zero credibility" to Rosario and Torres and then denied the motion. ECF No. 10-16, pp. 84, 86.

On November 15, 2016, Rosario filed a motion to incur costs for a use-of-force expert or, alternatively, a motion to continue the case to secure funding for the expert. ECF Nos. 10-10, pp. 13-28; 10-11, pp. 2-5. After a hearing, the trial court denied the motion. ECF No. 10-16, pp. 89-96. Rosario filed eight motions for special jury instructions. ECF Nos. 10-6, p. 43; 10-12, pp. 13-14, 20; 10-13, pp. 45; 10-14, pp. 2-4, 7-14. All were denied except Instruction 8, justifiable use of deadly force: Rosario *did not* have a duty to retreat before using deadly force if he was engaged in unlawful activity under the 2011 version of the statute. ECF No. 10-14, pp. 11-13.

B. Trial, Sentencing, and Appeal

Trial commenced December 7, 2016. ECF No. 10-6, p. 43. Rosario was represented by two private attorneys at trial: Anabelle Dias and Joseph C. Bodiford. ECF No. 10-20, p. 2. Two days later, a jury found Rosario guilty on the lesser charge of attempted second degree murder (two counts). ECF No. 10-14, pp. 53-55. The trial court sentenced Rosario to forty years in

prison.[2] ECF No. 10-4, pp. 1, 4; Tr. 861.[3] Rosario, represented by Melissa J. Ford in his direct appeal to the First District Court of Appeal (First DCA) in Case No. 1D16-5591, presented two claims: (1) the trial court abused its discretion in denying the motion to incur costs for the use-of-force expert and (2) the trial court erred in denying the motion to suppress Rosario's statements to law enforcement. ECF No. 10-38. 2-53. See also ECF No. 10-15, pp. 6-7. On December 13, 2017, the appellate court affirmed the conviction and sentence, *per curiam*, without a written opinion. Rosario v. State, 237 So. 3d 957 (Fla. 1st DCA 2017); ECF No. 10-41, pp. 2-4. Rosario did not appeal further. His conviction became final ninety days later, on March 13, 2018, when he failed to seek certiorari review in the Supreme Court of the United States. Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002). See also Sup. Ct. R. 13.

C. Post-Conviction Proceedings

On September 13, 2018, Rosario filed a petition with the First DCA pursuant to Fla. R. App. P. 9.141(d), in Case No. 18-3965, alleging ineffective assistance of appellate counsel. ECF No. 10-43, p. 2-20. Rosario

---

[2] Rosario faced a mandatory minimum sentence of 25 years per count. Tr. 850, 853, 856-57.

[3] This Report uses the citation "Tr." followed by the page number in the top right corner when referring to the trial transcript.

claimed that appellate counsel failed to argue the trial court erred in giving the wrong jury instruction - that he had a duty to retreat if engaged in unlawful activity. Id., pp. 7-12. Rosario also claimed that appellate counsel failed to raise the issue that the trial court erred in denying the requests to modify the standard justifiable use of force instruction. Id., pp. 13-17. The First DCA denied the petition on the merits on May 22, 2019. Rosario v. State, 271 So. 3d 1244 (Fla. 1st DCA 2019); ECF No. 10-44, pp. 2-3.

Also on September 13, 2018, Rosario filed a *pro se* motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850. ECF No. 10-46, pp. 5-27. Rosario presented several claims including that trial counsel was ineffective for failing to object to the jury instruction that conditioned justifiable use of deadly force on whether he was engaged in unlawful activity. Id., pp. 7-10. Following an evidentiary hearing, the state court denied the motion on February 18, 2020. ECF No. 10-47, pp. 2-137. Rosario appealed to the First DCA, in Case No. 1D20-0657. ECF No. 10-49, p. 2-42. The appellate court affirmed the denial, *per curiam*, without a written opinion, on November 18, 2020. Rosario v. State, 313 So. 3d 84 (Fla. 1st DCA 2020). Plaintiff timely filed this Section 2254 petition on June 1, 2021. ECF No. 1.

## III.   Timeliness and Exhaustion

Parties correctly agree that the instant petition is timely; and the claims were properly exhausted.

## IV.   Standard of Review

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86,

102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Id.</u>

## V.    Applicable Law

### A. <u>Ineffective Assistance of Counsel</u>

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that (1) counsel's performance was deficient and (2) a reasonable probability that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 422 U.S. 668, 687, 694 (1984); <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011). If the petitioner cannot meet one of <u>Strickland's</u> prongs, the court does not need to address the other prong. <u>Strickland</u>, 466 U.S. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000). Regarding the prejudice requirement, the petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. For the court to focus merely on "outcome determinism," however, is

insufficient: "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A petitioner must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).

It is well settled that habeas petitioners bear the burden of proof in habeas proceedings. Blankenship v. Hall, 542 F.3d 1253, 1270 (11th Cir. 2008). By requiring habeas litigants to bear the burden of showing constitutional error, criminal proceedings are treated as "valid until proven otherwise." Occhicone v. Crosby, 455 F.3d 1306, 1310 (11th Cir. 2006).

B. Ineffective Assistance of Appellate Counsel

In Florida, claims concerning representation received by appellate counsel are properly brought by way of a petition for habeas corpus relief to the appropriate district court of appeal. State v. District Court of Appeal, First District, 569 So. 2d 439 (Fla. 1990). The Sixth Amendment does not require attorneys to press every non-frivolous issue that might be raised on appeal provided that counsel uses professional judgment in deciding not to raise

those issues. <u>Jones v. Barnes</u>, 463 U.S. 745, 753-54 (1983). That is because "a brief that raises every colorable issue runs the risk of burying good arguments – those that . . . 'go for the jugular.'" <u>Id.</u> at 753. Indeed, the practice of "winnowing out" weaker arguments on appeal, so to focus on those that are more likely to prevail, is the "hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986). Courts must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Eagle v. Linahan</u>, 279 F.3d 926, 940 (11th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 691).

"A petitioner alleging ineffective assistance of appellate counsel 'must show that counsel's performance was so deficient that it fell below an objective standard of reasonableness as well as demonstrate that but for the deficient performance, the outcome of the appeal would have been different.'" <u>Ferrell v. Hall</u>, 640 F.3d 1199 (11th Cir. 2011) (citing <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004)).

## VI.  Discussion

### A.  <u>Ground 1 – The trial court did not err in denying the motion to suppress because Rosario's statements to law enforcement were made voluntarily and without coercion</u>.

Rosario claims the state trial court erred by denying his motion to suppress statements because his statements were involuntary due to

coercion, overreaching, or deception by Officers Suleski and Cherry. ECF No. 1, pp. 4-12. According to Rosario, the officers employed coercive tactics "calculated to delude him as to his true position" and to "exert an improper influence over his mind." Id., p. 6. Rosario contends that, pre-<u>Miranda</u>, the officers engaged him in a personal discussion about his family who were at the police department after learning about his arrest; and they promised he would be able to see his family and hold his baby daughter "when we're done talking." Id. Rosario signed a <u>Miranda</u> waiver and admitted his involvement. Id. Rosario hesitated to continue; however, "investigators misled him about the dire circumstances he was in . . . that he had a lot to . . . look forward to," and, that "if anything that means anything to you is your little girl . . . you need to be honest." Id. Then, Rosario admitted he fired the gun. Id. Officers asked about the location of the gun, but Rosario said he would tell them if he knew. Id., p. 7. Cherry promised Rosario that punishment would be "minimal" if he cooperated. Id. Rosario argues this "constituted an impermissible promise of leniency in exchange for" his confession. Id. Rosario told the investigators where the gun was. Id.

The State correctly asserts that the exchange between Rosario and officers did not amount to an illegal means of overcoming his will. ECF No. 11, p. 22. According to the State, the officer's encouragement to "do the

right thing" did not induce the confession; and their statements about his family contained no implication Rosario was required to confess. Id., pp. 24-26. In his Reply, Rosario restates his claim and argues that his statements were induced by a direct promise that speaking with investigators was his only chance to be able to hold his daughter again. ECF No. 20, p. 2. Rosario's claim fails.

The Fifth Amendment of the United States Constitution protects against self-incrimination. It is well settled that when an individual is taken into custody and subjected to questioning, he must be advised of certain rights including the right to remain silent; the right to the presence of an attorney during questioning; and, that if he cannot afford an attorney, one would be appointed if he so desired. Miranda v. Arizona, 384 U.S. 436 (1966); Florida v. Powell, 559 U.S. 50, 59-60 (2010). An involuntary confession cannot be used against a defendant in a criminal trial. United States v. Thompson, 422 F.3d 1285, 1296 (11th Cir. 2005).

Nonetheless, the individual can knowingly and intelligently waive these rights and agree to answer questions or make a statement. The Eleventh Circuit has explained:

> For a waiver to be voluntary, knowing, and intelligent, (1) "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception";

and (2) "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

Everett v. Sec'y Fla. Dep't of Corr., 779 F.3d 1212, 1241 (11th Cir. 2015) (citing Moran v. Burbine, 475 U.S. 412, 420-21 (1986)).

The test for determining voluntariness focuses on "whether the defendant was coerced by the government into making the statement." Id. at 1295 (citations omitted). Coercive conduct includes "subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." Id. (citations omitted). Courts consider the following factors:

> [T]he youth of the accused . . .; his lack of education . . .; or his low intelligence . . .; the lack of any advice to the accused of his constitutional rights . . .; the length of detention . . .; the repeated and prolonged nature of the questioning . . .; and the use of physical punishment such as the deprivation of food or sleep . . .

Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (internal citations and footnote omitted).

A statement may be involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence," but promises of leniency, standing alone, are insufficient to render a confession inadmissible. Hutto v. Ross, 429 U.S. 28, 30 (1976) (the court of appeals erred in finding *any*

statement made as a result of a plea bargain was inadmissible). In <u>United States v. Hipp</u>, the Eleventh Circuit found that:

> [an officer's] statements that the agents "need[ed] to talk" to [the accused] and that cooperating truthfully would be in his "best interest" were not sufficiently coercive to render [his] statements involuntary. A mere admonition to the accused to tell the truth does not render a statement involuntary. <u>United States v. Vera</u>, 701 F.2d 1349, 1364 (11th Cir. 1983). Similarly, a general statement that cooperation may be beneficial to an accused, with no promise of leniency, does not amount to an illegal inducement. <u>See</u> <u>United States v. Nash</u>, 910 F.2d 749, 753 (11th Cir. 1990) (holding that an agent's statement to the defendant that cooperating defendants generally "fared better time-wise" did not amount to an illegal inducement).

44 F. App'x 943, 947 (11th Cir. 2016).

Other circuits held the same. <u>U.S. v. Jimenez-Diaz</u>, 659 F.2d 562, 567-68 (5th Cir. 1981) (investigative agent's promise to make the suspect's cooperation known to the prosecutor coupled with a disclaimer that the agent could make no binding promise was an insufficient inducement to render the statement involuntary); <u>U.S. v. Ornelas-Rodriguez</u>, 12 F.3d 1339, 1347 (5th Cir. 1994) (confession voluntary despite officers explaining the advantages of cooperating); <u>United States v. Santiago</u>, 410 F.3d 193, 202 (5th Cir. 2005) ("a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials."); <u>U.S. v. Fountain</u>, 776 F.2d 878, 884-86 (10th Cir. 1985) (confession voluntary despite

arguable grant of immunity by agent when well-educated defendant repeatedly attempted to make deal and was advised only U.S. Attorney's office could grant immunity when there were no signs of coercion); U.S. v. Baldacchino, 762 F.2d 170, 178-79 (1st Cir. 1985) (confession voluntary despite promise to bring defendant's cooperation to the attention of DEA when he signed a valid waiver after receiving Miranda warnings when there were no signs of coercion).

The burden of proving involuntariness rests with the habeas petitioner. Martin v. Wainwright, 770 F.2d 918, 925 (11th Cir. 1985). The petitioner must prove that in light of "the totality of the circumstances surrounding the interrogation," Fare v. Michael C., 442 U.S. 707, 725 (1979), "his will has been overborne and his capacity for self-determination critically impaired," Culombe v. Connecticut, 367 U.S. 568, 602 (1961). "Although the ultimate issue of voluntariness is a legal question requiring independent federal determination, state court findings of fact are afforded a presumption of correctness under 28 U.S.C. § 2254(d)." Harris v. Dugger, 874 F.2d 756, 762 (11th Cir. 1989). The AEDPA provides that the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Here, Rosario's argument relies solely on what he believes were promises made (to see his family and leniency). The period of questioning at issue lasted approximately twenty minutes. ECF No. 10-7, p. 42. <u>See also</u> ECF No. 10-15, p. 31 (motion to suppress hearing transcript). Suleski informed Rosario that his family was at the police station and was "concerned," "not happy," and believed he was a "good kid" who "want[s] to do the right thing and . . . provide for [his] daughter." <u>Id.</u>, p. 9. Suleski relayed the encounter to Rosario: that the family wanted to talk to Rosario first but were told they could do so after officers finished talking to him. <u>Id.</u>, pp. 9-10. Suleski told Rosario, "I'll let you talk to them, you know. . . talk to your girlfriend or whatever . . . let you hold your baby . . . stuff like that when we're done." <u>Id.</u>, p. 10. Cherry told Rosario it was important for him to be truthful and honest. <u>Id.</u>, pp. 10-12. Nothing suggests this was a threat that Rosario would never see the child again unless he confessed to a crime.

Rosario responded to several preliminary questions regarding his background. <u>Id.</u> Cherry issued the <u>Miranda</u> warning; Rosario confirmed his understanding, confirmed he did not ask anyone for an attorney, and waived <u>Miranda</u>. <u>Id.</u>, pp. 13-14. Rosario admitted to driving Torres to a parking lot "to go sell some weed" belonging to Torres. <u>Id.</u>, p. 16. When Rosario briefly hesitated with an "um," Suleski said, "you've got a lot to look forward to . . .

[Torres] will sell you down the river . . . anything that means anything to you is your little girl you need to be honest okay." Id., p. 17. Rosario commented he was "doing this for my little daughter Eva" and continued his confession. Id., p. 18. Rosario confessed he accepted the gun from Torres, exited the car, fired the gun at the victims, returned the gun to Torres, and then provided information about the location of the gun. Id., pp. 18-28. Throughout the interview, officers commented Rosario was doing the right thing.

Only *after* Rosario waived his Miranda rights and confessed was there any conversation about how his cooperation might impact his case. Still, the officers' comments are vague and make no specific promises. Cherry asked Rosario what Torres did with the gun, but Rosario said if he knew he would say so. Id., p. 27. Cherry said, "[b]ecause obviously . . . you knew what time it was. You know, it's understandable to try to minimize the damage" and indicated the gun was not in the car and asked about the location of the gun. Id., p. 27-29. Cherry continued, "you have taken the right steps to minimize as much time." Id., p. 31. Rosario recognized he was facing incarceration and stated, ". . . I mean I can't get probation because [of] what I did I know it will be time." Id., p. 31. Cherry responded, ". . . what you're doing, you just keep doing it, and it's going to be as minimal – I guarantee you." Id. But Cherry advised that "the prosecutors and judges" would "want to know where

that gun is. . . so if you can help me find that gun it's just going to be that much more." Id., p. 32. Rosario denied knowing the exact location of the gun. Id., pp. 32-36.

Rosario asked whether he might be released on bond. Cherry suggested he discuss a bond hearing request with his lawyer because a judge could decide to set bond, but Cherry did not offer a more definitive answer.[4] Id., pp. 36-37. After confessing, Rosario was clear he did not want an attorney present for this interview: "I'm not going to come in here and be like . . . I'm not talking unless I talk to a lawyer" and "I'm not that kind of guy that's going to sit here and be like I need to talk to a lawyer." Id., pp. 37, 39. Rosario asked what charges he would be facing. Id., pp. 43-45. Cherry responded, "you're being charged with robbery and . . . two charges of attempted first-degree murder . . . if that other person passes away, one of those will be upgraded to first degree murder." Id., p. 47.

Rosario filed a motion to suppress his statements. ECF No. 10-6, pp. 131-34; ECF No. 10-7, pp. 2-6. On May 15, 2013, the trial court held an evidentiary hearing on the matter. ECF No. 10-15, pp. 24-78. Video of the

---

[4] Ultimately, Rosario was placed on pretrial release on August 29, 2011. See ECF No. 10-8, p. 90.

interrogation was presented; and Suleski and Cherry testified.[5] Rosario also testified. Id., pp. 54-64. The trial court found that there was no coercive conduct on the part of the officers sufficient to overcome Rosario's free will. Id., pp. 71-72. Rosario was not subject to any undue influences because of the temperature of the room or other reasons, none of the statements at issue were made before the Miranda warning; and he signed a written waiver. Id., p. 72. Consequently, the court denied the motion. Id., p. 73. The decision was upheld on appeal. Rosario v. State, 237 So. 3d 957 (Fla. 1st DCA 2017).

Ultimately, Rosario fails to meet his burden that given "the totality of the circumstances" his free will was overborne. Rosario was an adult at the time of the investigation. There is no indication that Rosario had any competency issues or was subjected to duress or coercive tactics. The interview was relatively brief. At no time did Rosario ask for an attorney; rather, he repeated he did not want one. ECF No. 10-15, pp. 37, 39. Rosario did not ask the officers to stop the questioning. The officers never told Rosario he could not see his family or hold his daughter again without talking to them. See ECF No. 10-15, p. 35.

---

[5] Suleski's testimony is at ECF No. 10-15, pp. 30-39. Cherry's testimony is at ECF No. 10-15, pp. 39-50. Rosario's father, Juan Rosario, also testified. ECF No. 10-15, pp. 53-54.

The decisions of the state and appellate courts are presumed correct, were not contrary to nor involved an unreasonable application of clearly established federal law and were reasonable determinations in light of the evidence presented. 28 U.S.C. § 2254(d). Therefore, Ground 1 should be DENIED.

B. Ground 2 – The trial court did not abuse its discretion in denying Rosario's motion to incur costs for a use-of-force expert or to continue the case because the request was untimely.

Rosario alleges the trial court erred when it denied his motion to incur costs for a use-of-force expert or, alternatively, the motion to continue the case. ECF No. 1, pp. 12-18. The extra time would be necessary to find an alternative financial resource to pay the expert. Id. The expert would assist the jury by explaining the reactionary gap, Rosario's defense, and that he acted reasonably in using force. Id., pp. 12, 17. Rosario relies primarily on Ake v. Oklahoma, 470 U.S. 69, 82-83 (1985), which held an indigent defendant has the right to expert assistance at the government's expense during the guilt and sentencing phases of a criminal trial. Id., p. 13. Rosario maintains this was not a "last-minute continuance." Id., p. 17.

The State correctly states that Rosario waited five years to make the request; and the trial court already authorized $4,000 in investigative costs and $8,400 in costs for other expert testimony. ECF No. 11, p. 29. The State

argues that Rosario did not preserve or present a due process argument in the state courts. Id., p. 30. In his Reply, Rosario relies on his arguments in his petition and maintains that he was denied the opportunity to present expert Roy Bedard as a witness. ECF No. 20, p. 2. Rosario outlines what the expert opinions would have been. Id. However, this is somewhat speculative because the trial court had no affidavit to consider in evaluating the motion. Rosario's claim fails.

On November 15, 2016, Rosario filed the motion to secure the use-of-force expert. ECF Nos. 10-10, pp. 13-28; 10-11, pp. 2-5. Alternatively, Rosario sought to continue the case to find alternative funding. Id. Estimated costs were $200 per hour or a maximum sum of $3,000. ECF No. 10-10, p. 18. Only Mr. Bedard's curriculum vitae was attached in support. Id., pp. 19-28; ECF No. 10-11, pp. 2-5. The Justice Administrative Commission "[took] no position" on the motion. ECF No. 10-11, p. 6.

The next day, the trial court held a hearing. ECF Nos. 10-16, pp. 89-96; 10-11, p. 12. When questioned about the need for a "second expert," Attorney Dias was "[un]comfortable having this on the record," and preferred "to wait until the end of the docket" to avoid having it "on the record."[6] Id.,

---

[6] Rosario presents no ineffective assistance of counsel claim as to this issue. Accordingly, the Court makes no finding as to counsel's performance in requesting the use-of-force expert or a continuance.

p. 95. No oral argument was made. The court denied the motion stating the case had "been set for trial no fewer than nine times including one . . . back in [2013], when Judge Sheffield [said] . . . that was absolutely the last continuance." Id., p. 93. See also Order, ECF No. 10-11, p. 12. No due process argument was made. On November 23, 2016, Rosario filed a renewed motion to continue explaining the need for Mr. Bedard's testimony because the State never investigated the self-defense claims. ECF No. 10-12, pp. 7-10. The court again denied the request. Id., p. 12.

On direct appeal, Rosario argued (1) the expert was necessary to support a self-defense claim because, without the expert, the jury concluded there was no threat to Rosario or the passenger in his car when he elected to use force and (2) the denial of the expert violated his rights to due process. ECF No. 10-38, pp. 39-47. The State argued the court already granted Rosario a firearms/crime scene expert and a forensic psychologist to establish a PTSD defense; and Rosario failed to establish a particularized need. ECF No. 10-39, pp. 7-12. A use-of-force expert was unnecessary. Id.

The First DCA affirmed the denial without an opinion. Rosario v. State, 237 So. 3d 957 (Fla. 1st DCA 2017). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011). Without a reasoned opinion, the Court must consider the next reasoned decision. See Wilson v. Sellers, 138 S. Ct. 1188, 1192-94. Thus, the Court considers the trial court's reasoning.

It is true that, under Ake, criminal defendants have a right to the assistance of expert witnesses. Nonetheless, that request must be timely. "An indigent defendant who did not have the assistance of an expert in preparing and presenting his case cannot be heard to complain about his conviction on due process grounds unless he made a timely request to the trial court for the provision of expert assistance, the court improperly denied the request, and the denial rendered the defendant's trial fundamentally unfair." Moore v. Kemp, 809 F.2d 702, 704 (11th Cir. 1987). By the same token, in Florida, a court does not abuse its discretion in denying a continuance based "upon an 'eleventh hour request' for an expert witness where such a request could have been made earlier." Lawson v. State, 884 So. 2d 540 (Fla. 4th DCA 2004). "Granting a continuance is within a trial court's discretion, and the court's ruling will be disturbed only when that discretion has been abused." Bouie v. State, 559 So. 2d 1113, 1114 (Fla. 1990).

For years, Rosario expected to claim self-defense. As narrated above, Rosario was charged in 2011 and released pending trial. ECF No. 10-6, pp. 24-25. Two years later, Rosario filed a motion to dismiss seeking immunity under Florida's "Stand Your Ground" law and had an evidentiary hearing on the same. ECF No. 10-7, pp. 82-86. In 2013, Rosario filed motions to secure a "firearms/crime scene expert" and a forensic psychologist, which were granted. ECF Nos. 10-7, pp. 67-68, 79-81; 10-8, pp. 95-98. By August 2014, these witnesses were on Rosario's witness list for trial. ECF No. 10-8, p. 146. Yet, Rosario waited until November 2016, more than five years after his arrest, to file a motion for a use-of-force expert -- three weeks away from the start of his trial that had been continued for the ninth time. Attorney Dias' representation began in June 2012. ECF No. 10-6, p. 27. With five and one-half years to secure this expert, Rosario's assertion that the trial court denied him the opportunity to retain one is disingenuous.

Because Rosario was provided sufficient time to prepare for trial and hire expert witnesses, it cannot be maintained that the trial court abused its discretion when it denied the motion or, alternatively, refused to grant the continuance. Ramos v. State, 75 So. 3d 1277, 1281 (Fla. 4th DCA 2011) (affirming the trial court's denial of a motion for continuance because

defendant's "actions and those of his private counsel of choice were responsible for the lack of adequate preparation time, if any.").[7]

The trial court's decision was summarily affirmed on appeal. The decisions of the state and appellate courts were not contrary to nor involved an unreasonable application of clearly established federal law and were reasonable determinations in light of the evidence presented. 28 U.S.C. § 2254(d). Therefore, Ground 2 should be DENIED.

C. Ground 3 – Rosario was not prejudiced by counsels' failure to object to an erroneous jury instruction.

Rosario was represented by two private attorneys at trial each with approximately two decades of experience.[8] "The presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." Callahan v. Campbell, 427 F.3d 897, 933 (11th Cir. 2005) (internal citation omitted). Parties agree that counsel failed to object to an erroneous jury instruction that Rosario had a duty to retreat and could not stand his ground and meet force with force if engaged in unlawful

_____

[7] Rosario did not raise any claims of ineffective assistance of counsel on this matter.
[8] Attorney Dias was admitted to the Florida Bar in 1999 and had nearly seventeen years of experience at the time of trial. Attorney Bodiford was in practice for at least twenty years since he was admitted to the Florida Bar in 1996. Attorney information, including dates of admission to the Florida Bar, is available through the online lawyer directory at the following URL: https://www.floridabar.org/directories/find-mbr/. Accessed 3/18/2022.

activity. ECF No. 1, pp. 18-26. The question is whether this failure resulted in an unfair trial.

The State argues that the trial court gave four separate jury instructions dealing with justifications, excuses, and defenses that would negate criminal culpability: "Introduction to Attempted Homicide," "Justifiable Attempted Homicide," "Excusable Attempted Homicide," and "Justifiable Use of Deadly Force." ECF No. 11, p. 32. According to the State, the incorrect instruction did not affect the verdict because there was overwhelming evidence to support a conviction, there was no suggestion from the State that Rosario had a duty to flee, and he was not denied a self-defense claim. Id., pp. 38-43. The State points out that defense counsel sought special instructions to negate the phrase altogether, but the trial court denied those requests. Id., p. 45. In his Reply, Rosario insists that his sole defense -- self-defense -- was negated by the erroneous jury instruction. ECF No. 20, pp. 2-5. Rosario's claim fails.

"Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, so infected the entire trial that the resulting conviction violated due process." Jamerson

v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle

v. McGuire, 502 U.S. 62, 72 (1991) (internal quotations omitted)).

At trial, the evidence showed that Rosario shot Key and Morant, in the

back from fifty feet away, after the drug deal went awry. Key testified he was

with Morant at the time they approached Rosario's vehicle, denied knowing

they were there for marijuana, and said they were unarmed. Tr. 60-63. Key

had his back to Rosario's vehicle when he heard a struggle; and someone

said, "gimme this." Tr. 63-64, 69. From what Key could recall, he saw Morant

run, heard gunshots, and found himself lying face down on a sidewalk shot

in the back. Tr. 64-66. Key suffered a spinal cord injury and became

paralyzed. Tr. 66-68. Key's surgeon, Dr. Ruark, testified and confirmed the

injuries and trajectory of the bullets to Key's back. Tr. 283-84.

Lucy Brabham, an eyewitness to the shooting, testified:

> I saw two boys running across . . . just tearing down . . . the
> next thing I saw was that somebody came out from . . .
> inside the row of cars and was standing right by the rear,
> the back of one of the cars. So just walked out behind and
> stood there for a second. And the next thing I noticed was
> that his arm came up and extended out with a gun . . . I
> saw him shoot and quite a lot of times . . . towards the same
> direction where I had just seen the boys run away from . . .
> towards the direction of the other apartment.

Tr. 133-34. Brabham also testified that the shooter was "out into the driveway

. . . behind the trunk of the car" and confirmed he was "shooting in the

direction of where the boys went." Tr. 135-36. She called 911 for assistance. Tr. 138. Brabham identified the black Mustang but not the occupants. Tr. 142-44. The 911 call was played for the jury, with Brabham reporting, "two boys running away . . . one guy shooting after them." Tr. 177-78.

The videotape of Rosario's post-<u>Miranda</u> statements to officers was also played for the jury. Tr. 338-72. Rosario told officers he drove Torres to a parking lot to "sell some trees" (marijuana). Tr. 347. Torres was in the front passenger seat; and the gun was between the center console and Torres' seat. Tr. 349, 351. "Two black guys" approached the passenger side of his car, which was open because the window did not work. Tr. 354-55. Rosario was looking down at his phone at the time. Tr. 355. "Something happened. The kid punched my cousin and tried to snatch off [the marijuana]." Tr. 350. "They both – like one was right here; one was right here. This person punched him and tried to take it. Took it and run off . . ." Tr. 355. Torres handed the gun to Rosario saying, "they got me." Tr. 351, 356. Gun in hand, Rosario "jumped out" of the car, fired it in their direction, then, got back into the car, gave the gun back to Torres, and "just drove off." Tr. 357, 359-60. Rosario could not recall how many times he fired the gun. Tr. 357. Police found six shell casings at the scene. Tr. 383. Investigator Cherry testified the distance between the shell casings and where the victims were found was

greater than fifty feet. Tr. 821. The defense did not put forth any witnesses. Tr. 626-30, 638-46.

At least twice, Attorney Bodiford renewed the "Stand Your Ground" motion and was denied each time. ECF No. 10-20, p. 7; Tr. 634, 719. Attorney Dias filed eight motions for special jury instructions: (1) "attempted homicide is excusable if the defendant would have been justified in the use of force in self-defense and unintentionally injured a third party"[9]; (2) "a person has no duty to warn an attacker that he has a gun before exercising his right of self-defense"[10]; (3) a "defendant must make prima facie showing that he acted in self-defense or defense of others," but under the law, he was not required "to prove self-defense"[11]; (4) a "requirement that the State prove beyond a reasonable doubt that the defendant did not act in self-defense"[12]; (5) a person may not be arrested "for using force unless . . . there is probable cause that the force that was used was unlawful"[13]; (6) a "victim . . . in retreat at the time the defensive force is employed" is not an "exception to claiming

---

[9] ECF No. 10-12, p. 13.

[10] Id., p. 20.

[11] ECF No. 10-13, p. 45.

[12] ECF No. 10-14, p. 3.

[13] Id., p. 5.

justifiable use of force"[14]; (7) "[i]t is not relevant whether the defendant was engaged in unlawful activity because the law allows him to claim self-defense even if he was engaged in unlawful activity at the time he acted in self-defense"[15]; and, finally, (8) the justifiable use of deadly force should reflect the 2011 law.[16] Attorney Dias argued the standard jury instruction reflected the 2014 amendments and do not "apply retroactively to prior conduct." Id., p. 11. Under the 2011 version, Rosario would have no "duty to retreat before using deadly force." Id., p. 12. Attorney Bodiford presented oral arguments on the motions and moved for a judgment of acquittal. Tr. 631-33, 662-77. The trial court granted Instruction #8 and denied all other instructions but granted an acquittal on the drug charge. Id.

The trial court gave the jury several instructions. Tr. 737-63, 833-35. The instruction at issue is:

> If the defendant was not engaged in an unlawful activity and was attacked in any place where he had the right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or another, or to prevent the commission of a forcible felony . . . if the defendant was in an occupied vehicle where he had the

---

[14] Id., p. 7.

[15] Id., p. 9. The trial court denied this special instruction because it was not "helpful or an accurate statement of the law." Tr. 672.

[16] Id., pp. 11-13.

right to be, he is presumed to have had a reasonable fear
of imminent death or great bodily harm to himself or
another if . . . another person had unlawfully or forcibly
entered or removed or attempted to remove another
person against that person's will from that occupied vehicle
and the defendant had reason to believe that had occurred.
The defendant had no duty to retreat under such
circumstances.

Tr. 753-54. The trial judge asked if there were "[a]ny objections to the

instructions as read," but there were none. Tr. 835.

During closing arguments, the State made no suggestion to the jury

that Rosario had a duty to retreat or that he could not use deadly force if he

was engaged in unlawful activity. Tr. 767-80. The State explained the

justifiable use of deadly force and self-defense. Tr. 774-80. Attorney Dias

clarified for the jury that whether Rosario was engaged in unlawful activity

was not a consideration for them "because the court took care of [the drug

count] count" and that Rosario's fear justified the shooting.[17] Tr. 805.

On rebuttal, the State argued that deadly force in self-defense required

"fear of death or great bodily harm;" and Attorney Dias objected.[18] Tr. 826.

The trial court overruled the objection. Id. The State emphasized to the jury

that there was no evidence presented at trial that Rosario was in any fear,

---

[17] Defense closing arguments are found at Tr. 780-821.

[18] The State's rebuttal argument is found at Tr. 821-33.

but this was new in defense counsel's closing argument. Tr. 827. Attorney Dias objected but was again overruled. Id. Before submitting the case to the jury, the trial court asked whether there were any objections to the jury instructions. Tr. 835. Both parties said, "no." Id.

Rosario raised the issue in his Rule 3.850 motion; and an evidentiary hearing was held on the matter. ECF No. 10-47, pp. 3-138. Both attorneys and Rosario testified. Id. Attorney Bodiford detailed his extensive experience: an assistant state attorney for three years and "in private practice since 1999 doing almost exclusively criminal defense and criminal appeals . . . maybe a dozen [civil] cases in 20-something years." ECF No. 10-47, p. 7-8. He explained that, as part of the trial strategy, he was tasked with getting a judgment of acquittal on Count III, which was the unlawful activity. Id., pp. 10-11, 17-18. There were "conversations" with the judge but not a formal "objection." Id., p. 18.

A habeas petitioner must demonstrate that (1) counsel's performance was deficient and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 422 U.S. 668, 687, 694 (1984); Harrington v. Richter, 562 U.S. 86, 104 (2011). If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697.

Counsels' efforts to secure the 2011 instruction and other self-defense instructions serve to highlight their failure to object to the standard instruction, which was not the state of the law at the time Rosario committed the crime. This error satisfies <u>Strickland's</u> first prong. However, this is not the end of the inquiry.

The focus of the erroneous instruction is whether Rosario had a duty to retreat if engaged in unlawful activity. However, whether Rosario had a duty to retreat does not deprive him of a "self-defense" defense altogether. As previously stated, the trial court provided four instructions relating to the justifiable use of force and self-defense. More importantly, irrespective of whether Rosario was engaged in lawful activity at the time, the overwhelming objective evidence presented at trial demonstrates that the shooting was retaliatory in nature and not in self-defense. First, Rosario did not use the gun *during* the snatching but afterward. Second, the victims were running away from the car after the bag tore open. Finally, Rosario grabbed the gun from Torres, got out of the vehicle, and shot at the victims' backs from approximately fifty feet away. Tr. 778-80. This is not self-defense under the law. True, under the 2011 law, Rosario did not have a duty to retreat. However, Rosario did not have the right to exit his car and shoot at two men who were running away from his car. There is no reasonable probability that

counsels' deficient performance prejudiced the defense to the point where the outcome would have been different or resulted in an unfair trial. Nor did the error "so infect[] the entire trial that the resulting conviction violate[d] due process." Jacobs v. Singletary, 952 F.2d 1282, 1290 (1992).

In light of the strong evidence, it cannot be said that the state court's decision was unreasonable. Rosario has not shown how the state court unreasonably applied Strickland or shown by clear and convincing evidence that the state court made an unreasonable determination of the facts. The decisions of the state and appellate courts are presumed correct, were not contrary to nor involved an unreasonable application of clearly established federal law and were reasonable determinations given the evidence presented. 28 U.S.C. § 2254(d). Ground 3 should be DENIED.

D. Ground 4 – Appellate counsel was not ineffective for failing to argue on appeal that the state trial court committed a fundamental error in instructing the jury that Rosario had a duty to retreat.

Rosario argues that appellate counsel was ineffective for failing to argue on direct appeal that the state trial court committed a fundamental error when it instructed the jury that he had a duty to retreat and could not stand his ground and meet force with force if he was engaged in unlawful activity. ECF No. 1, pp. 26-27.

The State asserts that, under Florida law, there was no fundamental error that deprived Rosario of a fair trial; and he was not deprived of his sole or primary defense strategy because there were several self-defense instructions. ECF No. 11, pp. 48-49. Questions of fundamental error should be left to the state courts. Id.

Because trial counsel did not object to the jury instruction, Rosario's ineffective assistance of appellate counsel claim turns on whether the alleged trial error is "fundamental" under Florida law. See Scott v. Sec'y, Dep't of Corr., 857 F. App'x 548, 551 (11th Cir. 2021). In Florida, "[j]ury instructions are subject to the contemporaneous objection rule, and in the absence of a contemporaneous objection at trial, relief regarding error in the instructions can be granted on appeal only if that error is fundamental." Floyd v. State, 850 So. 2d 383, 403 (Fla. 2002). See Parker v. Sec'y Dep't of Corr., 331 F.3d 764, 772-773 (11th Cir. 2003) (other citations omitted) (stating that "a jury instruction can be challenged even absent a contemporaneous objection at trial if the error was a fundamental error."). If the error is not fundamental, then Rosario's appellate counsel would have been procedurally barred from raising it on appeal; and, so, he could not have been ineffective for failing to raise it. Floyd, 850 So. 2d at 403.

The case of <u>Andujar-Ruiz v. State</u>, 205 So. 3d 803 (Fla. 2d DCA 2016), presented by Rosario in support of previous claim, is instructive here. Andujar-Ruiz claimed his appellate counsel failed to raise on appeal the trial court's instruction of the 2014 amendment to "Stand Your Ground," rather than the 2012 version, was fundamental error because his theory of self-defense was based solely on Fla. Stat. § 776.012(1). <u>Andujar-Ruiz</u>, 205 So. 3d at 805-06. There is a significant difference in the factual scenario between Andujar-Ruiz and Rosario's case. Andujar-Ruiz testified:

> . . . less than a minute and a half after he fled the scene where the victim threatened him, the victim's vehicle approached him at a stoplight. A verbal altercation ensued, and Andujar-Ruiz threatened to call the police. The victim exited his vehicle briefly but returned to get something out of it. Andujar-Ruiz saw something in the victim's hand. He testified that he was not sure exactly what it was but that he thought it was the hammer the victim had previously threatened him with. Andujar-Ruiz fired his gun four times into the passenger door of the victim's vehicle. He stated that he did not want the victim to get out of his car and that the victim could have had anything in his hand.

<u>Id.</u> at 805. The state appellate court found because Andujar-Ruiz relied solely on § 776.012(1), the instruction negated his only defense and "felonious possession of a firearm" did not preclude the defense under the statute, vacated the conviction, and remanded the case for a new trial.[19]

---

[19] J. Crenshaw dissented and noted that the evidence showed that Andujar-Ruiz's self-defense claim was extremely weak and the closing arguments "did not focus" on his

Here, Rosario did not rely solely on the 2011 "Stand Your Ground" defense. Justifiable attempted homicide and excusable attempted homicide also served to support self-defense. Under "justifiable attempted homicide" a jury could have acquitted Rosario if they believed he committed the act "while resisting an attempt to murder or commit a felony." Similarly, under "excusable attempted homicide," a jury could have found Rosario committed the act "by accident and misfortune" or "in the heat of passion, upon any sudden and sufficient provocation." More importantly, here, the victims were running away from Rosario and were approximately fifty feet away when he fired the gun at their backs.

The postconviction court analyzed the jury instruction claim at the Rule 3.850 hearing and found the claim was without merit. Rosario had claimed counsel was ineffective for failing to object to the instruction. The postconviction court found, "Mr. Bodiford did, in fact, ask that the unlawful activity instruction . . . should not be given" but the failure to object was "harmless beyond a reasonable doubt based on the overwhelming evidence in this case." ECF No. 10-47, p. 127-28. The court denied the ineffective assistance of counsel claim.

---

unlawful activity "or his duty to retreat" but "whether or not he was actually in imminent harm and acted in self-defense." Andujar-Ruiz, 205 So. 3d at 809. Accordingly, he was not deprived of a fair trial and the conviction should have been upheld. Id.

Rosario raised the claim of ineffective assistance of appellate counsel on the matter in a Rule 9.141 motion. ECF No. 10-432-21. The appellate court denied the claim without written opinion. <u>Rosario v. State</u>, 271 So. 3d 1244 (Fla. 1st DCA 2019). Based on a review of the record, the Court finds that Rosario's argument is without merit. As stated above, in the related claim against trial counsel, the Court does not find that the state courts' decisions were contrary to, or an unreasonable application of <u>Strickland</u>. Even if this Court were to assume *arguendo* that appellate counsel rendered deficient performance for failure to raise the claim on direct appeal, Rosario cannot establish that the outcome of the case would have been different but for appellate counsel's error. The overwhelming record evidence supports Rosario's conviction. Consequently, Ground 4 should be DENIED.

E. <u>Ground 5 – Appellate counsel was not ineffective for failing to argue on appeal the trial court's denial of the motion to modify the standard justifiable use of force instruction because the instruction included a provision for Rosario to act in defense of another.</u>

Rosario claims appellate counsel was ineffective for failing to argue on appeal the denial of the request to modify standard justifiable use of force instruction supporting facts. <u>Id.</u>, pp. 27-30. Rosario claims his sole defense was self-defense or the defense of another. ECF No. 1, p. 27. Rosario claims that under state law he is entitled to a special jury instruction if it is supported by the evidence, the standard instruction does not adequately cover the

defense theory, and if the special instruction is a correct statement of the law and is not misleading. Id., p. 28. The instruction should have included that Rosario was operating in defense of another person, namely, Torres. Id., p. 29. The issue was preserved for appeal; and appellate counsel was ineffective for not raising the issue. Id.

The State argues that the instruction did contain the term "or another" but Rosario believes the term should have been repeated additional times, which was unnecessary. ECF No. 11, pp. 55-56.

Here the jury instruction did include the term "or another" (and on more than one occasion), specifically:

> . . .The use of deadly force is justifiable if the defendant reasonably believes that the force was necessary to prevent:
>
> 1. Imminent death or great bodily harm to himself or another, or
>
> 2. The imminent commission of robbery and/or burglary with an assault or battery against himself or another.

Counsel is not required to raise frivolous claims. "The [S]ixth [A]mendment right to effective assistance of counsel does not require counsel to raise every objection without regard to its merit." Palmes v. Wainwright, 725 F.2d 1511, 1523 (11th Cir. 1984).

Rosario presented this claim in his Rule 9.141 motion; and the appellate court denied the claim on the merits. ECF Nos. 10-43, pp. 2-21; <u>Rosario v. State</u>, 271 So. 3d 1244 (Fla. 1st DCA 2019). The appellate court's decision was not contrary to nor involved an unreasonable application of clearly established federal law and was a reasonable determination in light of the evidence presented. 28 U.S.C. § 2254(d). Ground 5 should be DENIED.

## VII.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the Court issues a certificate of appealability.

Rosario fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal *in forma pauperis* should also be denied. <u>See</u> Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal *in forma pauperis*).

## VIII.    Conclusion and Recommendation

For the reasons stated, it is respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED;** and the case be **CLOSED** for further proceedings consistent with the Court's opinion.

**IN CHAMBERS** at Tallahassee, Florida, on April 6, 2022.

<u>s/ Martin A. Fitzpatrick</u>
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).

A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).